Barbara A. WHITE, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. CIV.A. 03–G–3361–NW.

United States District Court, N.D. Alabama, Northwestern Division.

Sept. 15, 2004.

---

Robert W. Bunch, Bunch & James, Florence, AL, for Barbara W. White, # 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, plaintiff.

Alice H. Martin, U.S. Attorney, Winfield J. Sinclair, U.S. Attorney's Office, Birmingham, AL, Reginald V. Speegle, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B. Barnhart, Commissioner of Social Security Administration, defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed November 16, 2000, as was an application for SSI as provided under Section 1601 of the Act, 42 U.S.C. §§ 1381 et seq. These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [Robert L. Hodge] was granted, and a hearing was held July 31, 2002. The ALJ's decision to deny benefits was handed down January 13, 2003. Plaintiff's request for review by the Appeals Council was denied November 24, 2003.[2] An appeal to this court followed.

Plaintiff is a 58 year old female with an eighth grade education. Past relevant work is as an assembler of small parts, a food preparer, and a cashier/checker. She claims disability as of September 10, 2000,

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

2. In support of plaintiff's request for review additional evidence was submitted to the Appeals Council. This new evidence was returned by the Appeals Council and was not included in the administrative record of pro-

due to arthritis in her right shoulder and back.

Claimant has testified she is in "horrible" pain. Her pain as of November 2000 was "severe, severe." In addition to right shoulder pain she has pain which begins in her hip and goes down the back of her leg—severe pain in her left leg all the time. She has muscle spasms. Being on her feet makes her pain worse. She is unable to perform repetitive movements with her right arm or lift things with it.

In October 1991 plaintiff was involved in an automobile accident. She saw Dr. Lloyd Johnson in December 1991 for back pain and radicular pain in the hips. Dr. Hall had been treating plaintiff conservatively from the time of the accident until this visit. She had failed to respond. The doctor found decreased range of motion [DRM] of the lumbosacral spine, and palpable muscle spasms of the lumbosacral area. Straight leg raise [SLR] produced pain bilaterally. The doctor gave her a prescription for four weeks of physical therapy including hot packs, ultrasound and magnatherm to the lumbosacral spine three times a week. He gave her a prescription for Orudis 75 [3] and Soma [4] compound.

Records of Dr. John C. Fraser, copied to Dr. Johnson January 21, 1992, show that he had examined plaintiff January 8, 1992.

At that time she was unable to work, having tried to do so.

A November 10, 1992, MRI of the lumbar spine showed a bulging annulus fibrosis at L5–S1 without evidence of a HNP at any of the visualized levels. Symptoms continued into 1993. She was eventually able to return to work. In 1995, after having been off work for two weeks she returned to see Dr. Johnson June 6, 1995, with complaints of back pain and radicular pain from the back into the legs. The ROM of the spine was diminished to 60% of normal. She had a positive SLR test. X-rays showed slight narrowing of the L5 S1 interspace and some anterior vertebral lipping at L4.

In addition to being treated by Dr. Johnson Ms. White was treated by Dr. Don Beach from November 1998 to May 2001, and thereafter. Some visit notation and treatment records from that time period are recorded below: [5]

1) November 4, 1998: severe back pain;

2) November 23, 1998: pain better with Incodin—P higher;

3) December 1, 1998: left shoulder pain;

4) December 22, 1998: back pain—HX severe arthritis that is HL AB 27 negative;

5) March 4, 1999: BP up too high— HTN under poor control—arthritis problems;

---

ceedings. Although this court could remand the case to the Commissioner for consideration of the evidence submitted to the Appeals Council, such remand is unnecessary. Substantial evidence exists in the record to reverse the decision of the Commissioner.

**3.** Orudis, a nonsteroidal anti-inflammatory drug, is used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis and osteoarthritis. It is also used to relieve mild to moderate pain, as well as menstrual pain. *Orudis, at* http://www.health                    square.

com/newrx/ORU1313.HTM (visited September 2, 2004).

**4.** Soma (Carisoprodol-generic) is a muscle relaxant used to treat the pain and stiffness of muscle injuries, including strains, sprains and muscle spasms. This medication may cause stomach upset, heartburn, headache, dizziness or drowsiness. *Soma, at* http://www.bestpillprice.com /Pages/MuscleRelaxers/Soma.htm?engine=180sol & keyword . . . (visited August 23, 2004).

**5.** Plaintiff was constantly on medication. Further listings of medication have been omitted from this opinion.

6) October 13, 1999: arthritis pain—lot of pain all over—HX fibromyalgia [6] and DJD [7]—has had ruptured disks in lumbar area and chronic R sciatica—injected bursitis L shoulder;

7) January 4, 2000: BP up—pain with movement left shoulder; shoulder x-ray showed moth eaten appearance of acromion;

8) May 24, 2000: arthritis—right shoulder pain with DJD;

9) October 10, 2000: chest pain—BP very high—at risk for shoulder surgery [8] despite moth eaten appearance of shoulder on x-ray;

10) October 10, 2000: x-ray views of shoulder showed significant degeneration of ACJ;

11) November 16, 2000: exquisitely tender over ACJ;

12) January 18, 2001: long standing arthritis, DJD of back, R sciatica, ruptured lumbar disk;

13) April 10, 2001: chronic back pain—burning neuropathy pain on inner costal nerves from back and around to L; and

14) May 15, 2001: ruptured back disk, R sciatia, fibromyalgia, DJD of spine—L back injury May 8—tender strained rhomboid on L back—continued back pain—possible gout—HTN-BP up again.

On July 10, 2002, Dr. Beach wrote a letter addressed "TO WHOM IT MAY CONCERN" in which he reported plaintiff's long history of ruptured discs in her back and lumbar spine with R sciatica, fibromyalgia, degenerative joint disease of the spine. He reported acute cervical strain and a loss of muscle mass in her right traprzius with bruises on her face, shoulders, R arm, lower back and tremendous chest pain on the L lower back. He concluded with the following words:

> She now has a very tender C6 with L radiculopathy, very tender L4 with radiculopathy but no abnormal reflexes. She has positive straight leg raising on the left. Due to finances there has been no recent x-rays of her cervical spine or lumbar spine. We have been unable to do an MRI.[9]

In effect, treating physician Beach's remarks in the above letter, say plaintiff is

---

**6.** Fibromyalgia indicates pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other "white" connective tissues. Merck Manual of Diagnosis and Therapy (15th ed.1987). It is a widespread musculoskeletal pain and fatigue disorder for which the cause is still unknown. Fibromyalgia means pain in the muscles, ligaments and tendons—the fibrous tissues in the body. FMS used to be called fibrositis. The pain of fibromyalgia has no boundaries. The disease is chronic. Overall studies have shown that fibromyalgia can be equally disabling as rheumatoid arthritis. *Fibromyalgia Basics—Symptoms, Treatments and Research*, (Google, Fibromyalgia Network 2002).

**7.** Degenerative joint disease.

**8.** Plaintiff has never had shoulder surgery.

**9.** Dr. Beach has written that lack of funds has prevented plaintiff from having more recent testing procedures. Older testing results, however, are in the record, and there is nothing in the record to indicate that the earlier tests results are no longer applicable. No corrective surgery had been performed. In discussing the issue of lack of funds for treatment our circuit has had the following to say:

> We agree with every circuit that has considered the issue that poverty excuses noncompliance. *See, e.g., Lovelace*, 813 F.2d at 59 ("To a poor person, a medicine that he cannot afford to buy does not exist"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir.1986) ("the ALJ must consider a claimant's alle-

disabled. Thereafter, in reply to an August 13, 2002, specific question[10] by Robert W. Bunch of Bunch and James relating to plaintiff bilateral manual dexterity and ability to work a regular job on a regular basis posed to him the doctor answered that prior to December of 2000 she would have been unable to perform the work. Her condition had not improved, as evidenced by his letter of July 10, 2002.

October/November 2000 treatment records of orthopedist Dr. D.R. Hersbrummer indicate he treated her for right shoulder pain. His examination showed she was in "acute distress." He found pain to manipulation of the shoulder. Direct pressure over the right ACJ caused a "lot of discomfort." She had minimal pain in internal rotation in abduction. X-rays (two views) of her shoulder showed "significant degeneration" of her ACJ. The doctor's impression was acromioclavicular arthritis.[11] On October 5, 2000, the doctor injected her with Marcaine. On a November 16, 2000, recheck plaintiff was "exquisitely tender" over the ACJ. The steroid injection had not helped. The doctor recommended an ACJ resection (Mumford procedure) and a Neer acrominoplasty at the same time.

Dr. Faye Wilson treated plaintiff May 14, 2001. Her notes indicate shoulder tenderness with external rotation and "exquisite tenderness" over the anterior area. Dr. Wilson diagnosed right shoulder bursitis and injected plaintiff's shoulder with steroids for pain. Her notes of September 4, 2001, diagnose hypertension, gastric disorder, allergic rhinitis, and fibromyalgia.

Dr. Will R. Crouch examined plaintiff July 9, 2001, at the request of Disability Determination. His impression follows:

1. Chronic right shoulder pain with significant tenderness and decreased ROM.

2. Chronic low back pain with decreased ROM right hip consistent with degenerative joint disease.

The doctor's notes conclude with the following statement: "Patient's x-ray of LS spine shows degenerative disc disease at L4–5 and L5–S1 with moderate disc

gation that he has not sought treatment or used medications because of lack of finances"); *Teter v. Heckler,* 775 F.2d 1104, 1107 (10th Cir.1985) (inability to afford surgery does not constitute an unjustified refusal and does not preclude recovery of disability benefits). Thus while a remedial or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986) (footnote omitted). *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988). This same reasoning is applicable to plaintiff's inability to have more recent expensive testing procedures. When you cannot afford it, you cannot afford it.

10. "In your medical opinion, does Ms. White suffer from degenerative joint disease of her right shoulder and back, L5–S1 disk syndrome to such an extent that she would be unable to do bilateral manual dexterity movements with her right upper extremity and do other work related activities 8 hours a day 5 days a week on a regular and routine basis prior to December of 2000?"

11. Acronioclavicular arthritis (AC) is a condition that takes place when the acromioclavicular joint (the junction of the clavicle and acromion) wears thin. This is not the same as shoulder arthritis. AC arthritis is the result of repeated movements that wears away the cartilage surface found in the acromioclavicular joint. Patients with AC arthritis usually complain of pain associated with shoulder movement. Depending on the severity of the pain AC arthritis can be treated with anti-inflammatory medications and physical therapy. In severe cases treatment might require surgery. *AC Arthritis, at* http://orthopedics.about.com/cs/generalshoulder/a/acarthritis.htm (visited September 9, 2004).

space narrowing consistent with degenerative disc disease."

A consultative musculoskeletal examination was performed by Dr. Robert Sparks at request of Disability Determination October 7, 2002. He found no objective signs of abnormality and no restrictions. Dr. Sparks's report does state that x-rays "were done by Dr. Don Beach May 22, 2002." [12]

Based on the above record the ALJ found that the medical evidence indicates plaintiff has degenerative joint disease of the right shoulder and lumbar degenerative disc disease. Her impairments were severe but did not qualify her for disability. He made no finding as to plaintiff's fibromyalgia. He found she has the residual functional capacity to perform at least light exertional work and that she is able to perform her past relevant work.

■ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th

Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

■ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

■ Having evaluated the evidence, the court holds that substantial evidence does not support the decision denying disability benefits. Improper legal standards were applied. 1) The ALJ failed to follow the pain standard established by the Eleventh Circuit.[13] 2) The ALJ failed to credit

---

12. Not withstanding other evidence this statement alone belies the ALJ's assertion that Dr. Beach did not treat plaintiff between the dates of February 2001 and the dates of his opinions in July and August 2002. Plaintiff has testified she saw Dr. Beach about once a month.

13. Whenever a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit standard requires:

   1. evidence of an underlying medical condition and either

the diagnoses of treating physicians [14] Beach and Wilson. 3) The ALJ failed to address plaintiff's fibromyalgia diagnosed by two treating physicians.[15]

2) objective medical evidence confirming the severity of the alleged pain arising from that condition or

3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

*Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). See also *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir. 1991); *Lamb v. Bowen,* 847 F.2d 698, 702 (11th Cir.1988); *Hand v. Heckler,* 761 F.2d 1545, 1548 (11th Cir.1985).

More recently, in *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir.2002), the court announced the pain standard as follows:

In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

In *Brown v. Sullivan,* 921 F.2d 1233 (11th Cir.1991), the court said:

The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987); *MacGregor,* 786 F.2d at 1054; *Landry v. Heckler,* 782 F.2d 1551, 1552. If the Secretary decides not to credit such testimony, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so. *Hale,* 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988); *Hale,* at 1011; *MacGregor,* at 1054.

*Brown v. Sullivan,* 921 F.2d at 1236. As in *Brown,* Ms. White's subjective testimony in the present case is well supported by objective medical evidence (x-rays, tenderness, decreased ROM, palpable muscle spasms, MRI, positive straight leg raise, manipulation, direct pressure) of degenerative disc disease, AC arthritis, and fibromyalgia—underlying conditions which could reasonably be expected to produce her pain.

**14.** While the opinions of physicians are not determinative of the issue of disability, 20 C.F.R. § 404.1526 (1995), the law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir.1982); *Smith v. Schweiker,* 646 F.2d 1075 (5th Cir. 1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986). The Secretary must give "explicit and adequate reasons for rejecting the opinion of the treating physician." *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991).

**15.** In discussing the disabling aspects of fibromyalgia this court turns to the opinion of *Glenn v. Apfel,* 102 F.Supp.2d 1252, 1258–59 (D.Kan.2000), set forth in part below:

Proper credibility determinations are essential in cases involving subjective symptoms. Subjective symptoms must be evaluated with due consideration of credibility, motivation, and medical evidence of impairment. *Dvorak,* 345 F.2d at 897. Other factors the court considers in evaluating whether pain is disabling are attempts to find relief from pain, willingness to try treatment, regular contact with a doctor, and daily activities.

．　　　．　　　．　　　．　　　．

The reviewing court may evaluate the ALJ's decision with a skeptical eye where the claimant's subjective complaints of pain are supported by treating physicians. *Broadbent,* 698 F.2d at 414. Both treating doctors agree that plaintiff is disabled, and none of the doctors suggested that plaintiff was exaggerating her symptoms.

．　　　．　　　．　　　．　　　．

[T]he symptoms of fibromyalgia are subjective, pain all over, fatigue, disturbed sleep, and stiffness, and there are no objective clinic tests to determine its severity.

Not only does plaintiff meet the pain standard, her treating physician Beach, as has Wilson, has diagnosed fibromyalgia of an indefinite duration and opined she is disabled.

For the reasons set forth above the court holds that the decision of the Commissioner is REVERSED. An order consistent with this opinion is being entered contemporaneously herewith.

## FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

It is FURTHER ORDERED that pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby GRANTED an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*

The ALJ failed to consider the diagnoses of fibromyalgia by two treating physicians. He failed to consider fibromyalgia a severe impairment and failed to explain why he was not crediting the diagnosis. He failed to conduct a meaningful analysis of her fibromyalgia. The opinion of the treating physician must be given controlling weight under 20 C.F.R. § 416.927(d)(2). *See Lewis v. Callahan,* 125 F.3d 1436 (11th Cir.1997) (In determining whether claimant is entitled to social security disability benefits, testimony of treating physician must be given substantial or considerable weight unless good cause is shown to contrary); *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir.1982) (The law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician."). *See also Walker v. Bowen,* 826 F.2d 996(11th Cir. 1987); *Smith v. Schweiker,* 646 F.2d 1075 (5th Cir.1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986). The Secretary must give "explicit and adequate reasons for rejecting the opinion of the treating physician." *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991).