**Louis E. ELAM, Petitioner–Appellant,**

v.

**RAILROAD RETIREMENT BOARD, Respondent–Appellee.**

No. 89–3634.

United States Court of Appeals, Eleventh Circuit.

Jan. 22, 1991.

---

Michael J. Babboni, St. Petersburg, Fla., for petitioner-appellant.

Michael Moran, U.S. Railroad Retirement Bd., Tampa, Fla., Edward S. Hintzke, Steven A. Bartholow, Board Members of U.S. Railroad Retirement Bd., Chicago, Ill., for respondent-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

GODBOLD, Senior Circuit Judge:

Louis Elam appeals from the Railroad Retirement Board's denial of disability benefits. He contends that the Board improperly discounted evidence that his injuries cause him pain sufficient to establish disability. He further asserts that the Board erred by not applying the correct legal standard to his testimony concerning pain and by giving insufficient reason for discrediting the opinions of two doctors who found him to be disabled. We reverse and remand to the Board with directions to enter a finding of total disability.

## BACKGROUND

Louis Elam worked as a railroad brakeman until he was injured in November 1984 when the train in which he was riding stopped suddenly and he was thrown to the floor and landed on his back. Since the accident he has complained of severe pain in his back and right leg and of swelling in that leg. The pain in his back began soon after the accident. He visited two hospital emergency rooms on the day of the accident and returned to the second three days later. He was later hospitalized for one week in late 1984 because of lumbosacral strain. Dr. Edwin Season treated Elam while he was hospitalized.

Elam continued to complain of persistent lower back pain after he left the hospital. Dr. Season x-rayed Elam's spinal column when he was again hospitalized in March 1985. The spinal x-ray revealed no abnormalities, and Dr. Season concluded that Elam's prospects for recovery were good. In May Elam underwent an x-ray of the veins in his right leg. Dr. Richard Frazier found no abnormalities and stated that he believed that the swelling Elam had experienced in his leg was a normal result of the trauma caused by the accident.

In July Dr. Blair Vermilion examined Elam and found no evidence of significant vascular disease. In August the continued swelling in the leg caused Dr. Vermillion to suspect that a mild venous insufficiency existed that might prevent Elam from sitting or walking for long periods. Later that month the railroad informed Elam that he was medically unqualified for his previous job because of his continuing lower back and leg symptoms.

Dr. John McDonough examined Elam in October and found no sign of serious venous abnormalities in his leg. Dr. Michael Kramer performed a neurological examination a month later and found no significant abnormalities relating to either Elam's back or leg. In January 1986 Dr. Vasken Tenekjian examined the leg, found it to be swollen, and concluded that Elam was probably suffering from chronic venous insufficiency. The doctor believed that the impairment would prevent Elam from performing work that required substantial standing or walking but not sedentary work.

During January Elam's treating physician, Dr. Bernard Bacevich, submitted office notes to Elam's attorney that indicated he might be suffering from a back sprain and venous insufficiency. Dr. Bacevich stated that the back condition would prevent Elam from returning to his former job and that the swelling in the his right leg would prevent him from doing even sedentary work.

Elam filed an application for a total and permanent disability annuity with the Board on March 18, 1986. In April the Board ordered Elam to undergo an orthopedic examination by Dr. Hassan Vaziri. Dr. Vaziri concluded that Elam could not return to the brakeman job but that he could engage in light or sedentary work. Dr. David McCollum examined Elam in July. He recorded Elam's complaints of lower back and leg pain that made it difficult for him to walk more than two blocks. Dr. McCollum was unable to find the cause of the pain.

Dr. Bacevich was deposed in October 1986. He testified that he had diagnosed Elam's back injury as lumbosacral strain and that this diagnosis was based primarily on Elam's complaints of pain. Dr. Bacevich also testified that Elam could not do sedentary work because prolonged sitting would aggravate the pain in his back and leg.

In December the appeals referee requested that Dr. Larry Williams perform a vascular examination. Dr. Williams concluded that Elam could not do work that required him to sit or stand for prolonged periods. Like Dr. Bacevich, Dr. Williams based his conclusion largely on Elam's complaints of pain. He contended that a condition such as Elam's did not lend itself to objective interpretations.

At the hearing Elam testified that he had constant pain in his right leg. He also stated that the pain increased with walking and that as a result he could walk no more than three or four blocks. He asserted that he must elevate the leg to alleviate the pain, that the pain in his back became more severe in the evening, and that there was "no way" he could do a job that would require him to sit at a desk all day.

The appeals referee held that Elam remained able to engage in the full range of sedentary work and in a wide range of light work. He found "very little objective evidence" relating to the back injury to support a finding of total disability. He held that while there was some evidence of a back injury, there was "no objective neurological or orthopedic evidence of an impairment of such severity as to induce the level of pain alleged by appellant."

The referee also rejected Dr. Bacevich's and Dr. Williams' conclusion that Elam was totally disabled, although the former was the treating physician and the Board had designated the latter to examine Elam. While acknowledging the deference he owed to Dr. Bacevich as treating physician, the referee found that the doctors' conclusions were not supported by objective evidence. He instead accepted the conclusions of the other doctors who had examined Elam, stating that objective evidence supported their conclusion that Elam's back and leg impairments were of only minimal severity and that Elam was capable of light or sedentary work. He also found no evidence of severe, disabling pain. The Board affirmed on October 25, 1988.

## DISCUSSION

■ We will not set aside the Board's determinations if they are supported by substantial evidence and are not based on an error of law. *George v. Railroad Retirement Board,* 738 F.2d 1233, 1235 (11th Cir.1983). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). But this standard of review applies only to findings of fact, and "no similar presumption of validity attaches to the [Board's] conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986). The provisions of the Railroad Retirement Act are so closely analogous to those of the Social Security Act that regulations and cases interpreting the latter are applicable to the former. *Goodwin v. Railroad Retirement Board,* 546 F.2d 1169, 1172 (5th Cir.1977).

### The Evolution of the Pain Standard

It was once the law of this circuit that a claimant could establish his or her disability by subjective pain testimony alone. *See*

*e.g. Boyd v. Heckler,* 704 F.2d 1207, 1210–11 (11th Cir.1983); *Simpson v. Schweiker,* 691 F.2d 966, 970 (11th Cir.1982). When these cases were decided Congress had not yet addressed the issue of subjective pain testimony, and, although the Secretary had promulgated regulations in 1980 that adopted a more objective pain standard, *Boyd* and *Simpson* did not discuss the regulation or the standard that it set out. The regulation provides:

> If you have a physical or mental impairment, you may have symptoms (like pain, shortness of breath, weakness or nervousness). We consider all your symptoms, including pain, and the extent to which signs and laboratory findings confirm these symptoms. The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. *We will never find that you are disabled based on your symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.*

20 CFR §§ 404.1529 and 416.929 (1988) (emphasis added). Thus our decisions in *Boyd* and *Simpson* were inconsistent with the Secretary's regulations, because these decisions permitted a finding of disability based solely on subjective pain testimony, while the regulations clearly did not. *See Bates v. Sullivan,* 894 F.2d 1059, 1065 (9th Cir.1990) (concurring opinion) (discussing similar inconsistency between Ninth Circuit case law and the regulation).

The inconsistency was not unique to the Eleventh and Ninth Circuits, so that the regulations did not have the intended effect of establishing a new, uniform pain standard. *Id.* Congressional dissatisfaction with some courts' reluctance to adopt the new standard led Congress to amend the statute to explicitly provide that subjective pain testimony alone could not support a finding of disability. *See* S.Rep. No. 466, 98th Cong.2d Sess., 23–24 (1984) ("[I]f courts ignore the Secretary's regulatory authority and the expressed Congressional concerns for careful administration, national uniformity and verifiable evidence, the Committee has little choice but to draw the statute as narrowly as possible."); *See generally Bates* at 1065–1068 (recounting legislative history).

The amendment, codified at 42 U.S.C. § 423(d)(5)(A), provided in part:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; *there must be medical signs and findings,* established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which *could reasonably be expected to produce the pain or other symptoms alleged* and which, when considered with all evidence required to be furnished under this paragraph (*including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings*), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A) (emphasis added).

This court took note of the amendments and adopted a pain standard that was consistent both with them and the Secretary's regulations. *Hand v. Heckler,* 761 F.2d 1545, 1548 (11th Cir.1985). We acknowledged in *Hand* that the amendments overturned *Boyd,* 704 F.2d 1207, *Simpson,* 691 F.2d 966, and other decisions that had permitted proof of disability by subjective pain testimony alone. *Hand,* 761 F.2d at 1548, n. 4. We also recognized that when Congress passed § 423(d)(5)(A) it intended to codify the existing regulations and to establish a uniform standard that required that a finding of disability be based on verifiable evidence. *Id.* (citing S.Rep. No. 466 at 23–24; H.R.Rep. No. 618, 98th Cong., 2d Sess. 13 (1984)).

In establishing our new standard in *Hand* we looked for guidance to the legis-

lative history of § 423(d)(5)(A), which provided:

There must be [1] evidence of an underlying medical condition and [2] there must be *objective medical evidence* to confirm the severity of the alleged pain arising from that condition *or* [3] the objectively determined medical condition must be of severity which can *reasonably be expected* to give rise to the alleged pain.

*Hand* at 1548 (quoting S.Rep. No. 466 at 24); *See also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir.1986) (discussing *Hand* ). Our decisions since *Hand*[1] and *Landry*[2] have consistently applied this three-part pain standard. *See e.g. MacGregor*, 786 F.2d at 1054; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987); *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir.1988).

■ The *Hand* standard is fully consistent with the Secretary's regulations, which remain in effect. The regulations provide that a claimant may establish disability based on subjective testimony of pain or other symptoms if "medical signs or findings show that there is a medical condition that *could be reasonably expected* to produce those symptoms." 20 CFR §§ 404.-1529 and 416.929 (emphasis added). Similarly, under the *Hand* standard a claimant who satisfies the first part of the standard by proving the existence of an underlying medical condition through objective medical evidence may establish disability based on pain by his own testimony supported by either of two alternative kinds of medical evidence. The claimant may show *either* that *objective* medical evidence *confirms* the pain testimony, *or* that the objectively determined medical condition *could reason-*

*ably be expected* to give rise to the alleged pain. *See MacGregor* at 1054; *Hale* at 1011.

■ While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011 ("Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the complainant complains is *itself* sufficient to sustain a finding of disability") (emphasis in original).

■ Furthermore, the standard does not permit a factfinder to arbitrarily discredit a claimant's testimony regarding pain. If the factfinder chooses to discredit such testimony, it is required to articulate "explicit and adequate" reasons for doing so. *Cannon* at 1545. If the factfinder fails to articulate its reasons for discrediting subjective pain testimony, then as a matter of law, that testimony must be accepted as true. *See Cannon* at 1545; *MacGregor* at 1054.

### *The Sunset Provision*

The amendments to § 423 were intended

1. In *Hand* the Appeals Council, on its own motion, reversed the administrative law judge's finding of disability based on pain. The panel's decision adopted the three-part standard set out above and affirmed the Appeals Council's action. 761 F.2d at 1547, n. 1. We vacated the panel's opinion and granted a rehearing en banc. *Parker v. Heckler*, 774 F.2d 428 (11th Cir.1985). The sole issue considered on rehearing was the proper scope of court review in cases in which the Council reverses the ALJ's ruling on its own motion. *Parker v. Bowen*, 788 F.2d 1512 (11th Cir.1986) (en banc). We determined the proper scope of review and remand-

ed to the panel for further proceedings. *Id.* at 1522. On remand the panel reinstated without change the part of its opinion that had adopted the three-part pain standard. *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986).

2. Although *Landry* was decided after we vacated the original panel opinion in *Hand*, n. 1, *supra*, the court failed to note that action in its discussion of *Hand*. That failing was cured when the panel in *Hand* reinstated its original opinion. *See Hand v. Bowen*, 793 F.2d at 276.

to be temporary.[3] The amendments contained a sunset provision that limited their application to cases in which the agency or a court on review made a determination prior to January 1, 1987. *See Hand*, 761 F.2d at 1548, (citing S.Rep. No. 466, 98th Cong., 2d Sess. 323–24 (1984)); *See also McCormick v. Secretary of Health and Human Services*, 861 F.2d 998, 1003 (6th Cir.1988) (amendments do not apply in cases in which the Secretary's determination was made after January 1, 1987). Thus, the amendments do not apply in this case because the Board did not make its determination regarding Elam's claim until October 25, 1988.

### The Current Standard

■ The sunset provision's operation does not alter the standard that we will apply in cases such as this one, in which disability based on pain is alleged, because we will continue to apply the regulations and the familiar three-part standard that the court in *Hand* took from the regulations and the amendments to the statute. *Hand* at 1548. Although the amendments to § 423 are no longer in effect, the termination of the temporary amendments does not resurrect the pre-*Hand* decisions that permitted proof of disability by subjective pain testimony alone. Rather the three-part *Hand* standard remains the law of this circuit, and, along with the Secretary's regulations,[4] continues to govern claims of disability based on pain. *Accord McCormick*, 861 F.2d at 1003.

### The Standard Applied

■ The Board did not properly apply the standard. The Board acknowledged that Elam's back and leg injuries constituted an underlying medical condition as required by the first part of the standard. It also concluded under the second part of the standard that the objective medical evidence did not confirm the severity of the alleged pain arising from those conditions.

This conclusion was supported by substantial evidence. The Board did not, however, properly apply the third, and alternative, part of the standard (whether the underlying back and leg conditions could reasonably be expected to cause the disabling pain alleged) to Elam's testimony and the two doctors' determination that pain rendered Elam totally disabled.

Elam testified that pain in his back and leg rendered him incapable of walking more than three or four blocks or sitting for extended periods. In addition, Dr. Bacevich, an orthopedist who was Elam's treating physician, and Dr. Williams, a vascular specialist requested by the Board to examine Elam, concluded that Elam's objectively determined back and leg conditions caused him to experience disabling pain and that the pain caused by such conditions would not manifest itself through objective evidence. Elam's testimony and the two doctors' opinions, if credited, would have established Elam's disability by application of the first and third parts of the standard.

■ The opinion of Dr. Bacevich, as treating physician, in particular was entitled to substantial weight, unless the Board could give good reason to the contrary. *MacGregor*, 786 F.2d at 1053; *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir.1988). The Board must accept the treating physician's testimony as true if it fails to properly refute the testimony, *MacGregor* at 1053.

The Board did not properly refute the two doctors' opinions. It merely stated that "[a]ll other doctors who offered opinions concluded that appellant could engage in some level of light or sedentary work activity. These conclusions were supported by objective evidence which indicates a back impairment and chronic venous insufficiency of only minimal severity." This conclusory statement is not sufficient.

---

3. Congress intended to develop a permanent pain standard before January 1, 1987, but as of yet it has not promulgated such a standard. See S.Rep. No. 466 at 24, cited in *Bates*, 894 F.2d at 1071 (discussing lack of a permanent standard).

4. The termination of the temporary statutory amendments had no effect on the continuing validity of the regulations.

Numerous doctors other than Bacevich and Williams examined Elam using a variety of diagnostic techniques. Most of the other doctors agreed that there was objective medical evidence of an underlying condition that could be reasonably expected to cause Elam *some* pain, although none of them agreed that Elam was totally disabled. The Board did not state on which of these other doctors' opinions it was relying or what objective evidence it believed supported their opinions. In short, it gave no "explicit and adequate" reason, *Cannon*, 858 F.2d at 1545, why the other doctors' opinions were sufficiently credible to overcome the deference it owed to the treating physician's opinion. Therefore, the Board must now accept as true the conclusion of the treating physician, corroborated by the conclusion of Dr. Williams, that Elam suffers from disabling pain. *MacGregor* at 1053.

REVERSED and REMANDED with directions to enter a finding of total disability.