Sophia R. GREEN, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Civil Action No. 05–G–2397–NE.

United States District Court,
N.D. Alabama,
Northeastern Division.

April 4, 2007.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Stephen Thompson, Social Security Administration, Office of General Counsel, Atlanta, GA, for Defendant.

### MEMORANDUM OPINION

J. FOY GUIN, Jr., District Judge.

The plaintiff, Sophia R. Green, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. *Id.*

In the instant case, ALJ Randall C. Stout determined the plaintiff met the first two tests, but concluded that while she has an impairment or impairments considered "severe" within the meaning of the Regulations, but not severe enough, individually or in combination, to meet or medically equal listed impairment. [R. 24, 28]. The ALJ found the plaintiff has a residual functional capacity of light work, with the restrictions that she should not work in unprotected heights or around hazardous machinery. [R. 28]. The ALJ concluded that the plaintiff is able to perform her past relevant work as a garment cutter. [R. 28]. When, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59. The presence of a nonexertional impair-

ment, pain, also prevents exclusive reliance on the grids. *Foote,* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Foote,* at 1559.

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

 As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor,* 786 F.2d at 1054; *cf. Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### THE STANDARD WHEN THE CLAIMANT TESTIFIES SHE SUFFERS FROM DISABLING PAIN

██ In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, she must be found disabled unless that testimony is properly discredited.

■ When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## DISCUSSION

The plaintiff filed on June 10, 2002, a first claim for disability benefits, which was denied on August 29, 2002. On September 30, 2003, the plaintiff filed a second application for disability benefits. Both applications claimed that the plaintiff became unable to work on September 16, 2001. The ALJ concluded that "neither good cause nor any other basis to reopen [the previous application] exists. Therefore, the undersigned has not reopened the previous decision dated August 29, 2002, and it stands as the final decision of the Commissioner on the claimant's [first application]." [R. 21].

■ "The decision not to reopen a previous application is not subject to judicial review 'unless that refusal is challenged on constitutional grounds.'" *Cherry v. Heckler,* 760 F.2d 1186, 1189 (11th Cir. 1985), quoting *Howard v. Califano,* 590 F.2d 137, 138 (5th Cir.1979); *see Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980 51 L.Ed.2d 192 (1977). Accordingly, this court cannot review the ALJ's decision not to reopen the claimant's first application.[1]

The plaintiff claimed that she is unable to work because of uncontrolled diabetes mellitus, hypertension, obesity, major depressive disorder with anxiety, diabetes-related vision problems, leg pain and migraine headaches. The plaintiff was hospitalized in July of 2001 and diagnosed with diabetic ketoacidosis[2]. [R. 232–233]. At the time of her discharge on July 25, 2001, the plaintiff was instructed to follow up with visits to Mark A. Sweeny, M.D., who treated the plaintiff from August 2001 through January 2003. [R. 295–370]. At that time, the plaintiff was working at International Paper's Champion mill, and presented to Dr. Sweeny complaining of leg pain and syncope[3]. At that time, Dr. Sweeny noted in his progress notes:

It is absolutely mandatory that the patient get a break every four hours and is allowed to take her insulin as well as snacks. I am very worried that this is endangering her life with this type of

---

**1.** While the plaintiff argues she "was apparently given no opportunity to be heard on the matter," [Plaintiff's Brief at 8], it is clear from the record that at the hearing, the ALJ raised the issue of *res judicata* of the previous application [R. 33], and that plaintiff "was represented by counsel and had an opportunity to present evidence." *Hall v. Bowen,* 840 F.2d 777, 778 (11th Cir.1987). Consequently, the plaintiff has failed to raise a colorable constitutional claim that her procedural due process rights were violated.

**2.** "Diabetic ketoacidosis" is "a type of metabolic acidosis produced by the accumulation of ketone bodies resulting from uncontrolled diabetes mellitus." *Dorland's Illustrated Medical Dictionary* at 16 (28th Ed.1994).

**3.** "Syncope" is "a temporary suspension of consciousness due to generalized cerebral ischemia; a faint or swoon." *Dorland's Illustrated Medical Dictionary* at 1622 (28th Ed.1994).

work because if her sugar gets too low, she is going to pass out and kill herself. [R. 358].

In December 2001, the plaintiff began to complain of migraine headaches that last for days at a time. [R. 349]. Over the course of the next year, Dr. Sweeny prescribed hydrocodone (Lortab 10, one to two tablets every six hours) for pain. [R. 295, 298, 301, 303, 305, 307, 314, 318, 320, 322, 326, 341, 343, 345]. Dr. Sweeny's continuing diagnosis was uncontrolled diabetes mellitus and insulin resistance. [R. 295, 301, 306, 315].

In February 2003, Moses Awoniyi, M.D., M.P.H., became the plaintiff's treating physician. Treatment notes from February 3, 2003, to October 13, 2004, indicate uncontrolled diabetes mellitus[4], migraine headaches, hypertension, and peripheral neuropathy. [R. 391–394]. On September 22, 2004, Dr. Awoniyi completed a Physical Capacity Evaluation ("PCE") which described the plaintiff's physical limitations and medical conditions supporting his assessments. [R. 438–439]. Dr. Awoniyi limited the plaintiff to lifting five pounds, prohibiting the plaintiff from walking any hours during a typical work day, and limiting the plaintiff to two hours of sitting without interruption, because of peripheral neuropathy. [R. 438]. Dr. Awoniyi also restricted the plaintiff from exposure to hazardous machinery, temperature extremes, chemicals, dust, noise, fumes and humidity because of syncope and headaches. [R. 439]. Dr. Awoniyi described the plaintiff's chronic leg pain as moderate when at rest, and moderately severe upon exertion. [R. 439]. Finally, he confirmed his diagnosis of uncontrolled diabetes mellitus and peripheral neuropathy. [R. 439].

 The ALJ gave little weight to the opinion of Dr. Awoniyi, because he claimed Dr. Awoniyi's "statements lack clinical support and are contradicted by the clinical evaluations of Dr. Sweeny." [R. 26]. This conclusion is not supported by the record. The ALJ does not explain how clinical support is lacking or how the statements are contradicted. A review of the treatment records of both Dr. Sweeny and Dr. Awoniyi reveals both treating physicians diagnosed a continuing history of uncontrolled diabetes.

If there is any contradiction by Dr. Sweeny, it is his conclusion the Plaintiff is not following the prescribed treatment. The ALJ noted that Dr. Sweeny thought that the plaintiff was totally noncompliant with her prescribed treatment of diet and exercise. [R. 23]. Dr. Sweeny's treatment notes from January 24, 2003, do state, "I see no real reason why she needs to continue to stay off work.[5]" [R. 296]. To put this statement in further context, the same treatment notes state, "I am very concerned about this patient and to ensure that she is not harmed, we will keep her off work until we have [a specialist] evaluate her." [R. 296]. The ALJ goes on to conclude that the plaintiff remained noncompliant during her treatment from Dr. Awoniyi. "For example, the claimant gained 25 pounds from August 2003 to October 2003. This indicates the claimant was not following her prescribed treatment of diet and exercise." [R. 26].

The ALJ seems to be basing his conclusion of noncompliance solely on the plaintiff's weight. However, an objective analysis of compliance as evidenced solely by weight shows a general trend toward

---

4. In March 2003, the plaintiff was referred to Bobby N. Johnson, M.D., of Endocrinology and Diabetes Associates, L.L.C. Dr. Johnson confirmed the diagnosis of uncontrolled diabetes mellitus. [R. 383–384].

5. The court notes that while Dr. Sweeny was the plaintiff's treating physician, he was treating her on behalf of her employer.

weight reduction, with a high of 282 pounds in December 2001 and a low of 217 pounds in January 2004.

■ Moreover, in cases involving obesity, "[a] physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment, nor does a claimant's failure to accomplish the recommended change constitute a refusal to undertake such treatment." *McCall v. Bowen,* 846 F.2d 1317, 1319 (11th Cir. 1988). Also, "[L]osing weight is a task which is not equivalent to taking pills or following a prescription." *McCall,* quoting *Hammock v. Bowen,* 879 F.2d 498, 504 (9th Cir.1989).

The Commissioner's reasons for refusing to credit Dr. Awoniyi are not supported by substantial evidence. Because the ALJ failed to properly refute a treating physician's testimony, as a matter of law, that testimony, including Dr. Awoniyi's PCE, must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216.

■ The presence of another condition, pain, also supports a finding of disability. The ALJ found that the plaintiff met the first part of the Eleventh Circuit's Pain Standard, but that the plaintiff did not meet either prong of part two. [R. 25]. There is no question that the plaintiff has an underlying medical condition, uncontrolled diabetes mellitus.

The ALJ's finding that "neither prong of part two is met" is not supported by substantial evidence. [R. 25]. The plaintiff testified that she suffers from cramps and spasms in her legs which prevent her from standing. [R. 39–42; 45]. She also testified she suffers from migraine headaches that last for two to three days. [R. 57]. Treatment records from both Dr. Sweeny

and Dr. Awoniyi are replete with references to the plaintiff's complaints of migraine headaches [6]. [R. 345, 349, 448, 454, 455, 459, 460]. Dr. Awoniyi's treatment notes also reference peripheral neuropathy. [R. 444, 447]. A "longitudinal history of complaints and attempts at relief" supports the plaintiff's pain allegations. *See* SSR 96–7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.") Over a period of three years, Drs. Sweeny and Awoniyi prescribed hydrocodone, a narcotic, for the plaintiff's pain. [R. 298, 301, 303, 305, 314, 320, 322, 328, 341, 343, 345, 440, 441, 445, 447, 448, 452]. The ALJ's conclusion that "[t]here is no objective clinical evidence of any condition(s) that could reasonably be expected to produce the level of pain, fatigue, weakness, dizziness, headaches, or other symptoms and limitations" is not supported by substantial evidence. [R. 25]. The ALJ's reason for rejecting the plaintiff's pain testimony apparently is based on a one-time consultative disability determination examination by Marlin D. Gill, M.D. [R. 26]. However, while the ALJ noted that Dr. Gill's physical examination of the plaintiff indicates that she "could lift her legs off the exam table with no difficulty," [R. 26], Dr. Gill also assessed, "I do not think she will be able to do significant standing and walking or stooping, squatting, lifting, etc." [R. 403]. Dr. Gill's findings are not contrary to the findings of the plaintiff's treating physicians. Therefore, the Commissioner's re-

---

6. The ALJ stated, "The claimant returned to Dr. Awoniyi and reported recurring headaches, but a CT scan of the head was normal." [R. 26]. In determining the plaintiff's credibility regarding her pain, it does not follow that an unremarkable CT scan rules out the presence of migraine headaches, especially in a patient with uncontrolled diabetes.

**1248**

fusal to credit the plaintiff's pain testimony is not supported by substantial evidence, and pain testimony of the plaintiff must be accepted as true.

■ The vocational expert (VE) testified that, based upon the limitations contained in PCE of Dr. Awoniyi, and assuming the plaintiff's pain testimony is credible, "[t]hat would appear to preclude all work activity based on [the] reported need to lie down all day on occasion, headaches which are severe at least weekly, and restrictions in the use of her hands." [R 66]. Therefore, the Commissioner's finding that the plaintiff's residual functional capacity did not preclude her past relevant work as a garment cutter is not supported by substantial evidence.

### CONCLUSION

Based upon the opinion of Dr. Awoniyi and upon the expert vocational testimony at the ALJ hearing, the plaintiff is unable to perform any work activity. Therefore, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed, with an onset date of the day following the denial of the plaintiff's first application, will be entered contemporaneously herewith.

DONE and ORDERED.

### *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed, with an onset date of the day following the denial of the plaintiff's first application. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*

DONE and ORDERED.