**Dimple RELIFORD, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**Civil Action No. 05–G–0050–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

Aug. 2, 2006.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Reginald V. Speegle, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Dimple Reliford, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Russell Lewis, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote,* at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59. The presence of a nonexertional impairment, such as pain, also prevents exclusive reliance on

the grids. *Foote,* at 1559. In such cases "the [Commissioner] must seek expert vocational testimony". *Foote,* at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

■ In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR § § 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that

"[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

 When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

 As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor*, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor*, 786 F.2d at 1053; *Elam*, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor*, 786 F.2d at 1054; *cf. Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In *Sarchet v. Chater*, 78 F.3d 305 (7th Cir.1996), Chief Judge Posner examined fibromyalgia in detail:

> [F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. *See* Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 *Arthritis & Rheumatism* 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, *Current Medical Diagnosis & Treatment 1995* 708–09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a

rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 *British Med.J.* 386 (1995); *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306–307. Other courts have also recognized that fibromyalgia can be disabling. *Kelley v. Callahan,* 133 F.3d 583, 589 (8th Cir.1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its illusive nature, the presence of fibromyalgia can be objectively verified in some cases. As noted in *Sarchet,* there are tender areas, or "trigger points," which are well defined and cause pain upon palpitation. Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed. *Kelley* at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections). Clearly, then, fibromyal-

gia if properly diagnosed satisfies the pain standard.

## DISCUSSION

In the present case the ALJ found that the plaintiff suffers from fibromyalgia. [R 20] The plaintiff was referred to Dr. Hernandez in May 2001 for evaluation of musculoskeletal pain. [R 182] Dr. Hernandez diagnosed the plaintiff as suffering from fibromyalgia based upon his finding of "characteristic tender points.". [R 182–83] Dr. Hernandez's treatment notes show that the plaintiff was treated with limited success. For example, on February 28, 2002, Dr. Hernandez noted that "[s]he still has significant muscular spasm and myofacial massage has not even been able to release this." [R 177] On examination he found "numerous tender points with negative controls." [R 177] Negative controls are points other than the specified 18 points used to diagnose fibromyalgia. *See,* Gronemann, Ribel–Madsen, Bartels1, Danneskiold–Samse and Bliddal, *Collagen and Muscle Pathology in Fibromyalgia Patients,* Rheumatology, Vol. 43, No. 1, at *http://rheumatology.oxfordjournals.org/cgi/content/full/43/1/27* ("Assessments of tender points and four negative control points were carried out by two independent examiners....")

Plaintiff's treating neurologist, Dr. Nuthi, completed a clinical assessment of pain form indicating the plaintiff suffered from pain at a level that was "distracting to adequate performance of daily activities or work." [R 246] The ALJ stated that he gave Dr. Nuthi's opinion "some weight." However, the ALJ only discusses Dr. Nuthi's assessment in terms of the plaintiff's physical capacity. [R 22] The ALJ did not give any reason for refusing to credit Dr. Nuthi's opinion as to the plaintiff's pain. The ALJ states that the "opinion of Dr. Nuthi is not consistent with his own medi-

cal findings." [R 22] However, he does not indicate in what way Dr. Nuthi's opinion is inconsistent. Substantial evidence does not support the ALJ's conclusory finding on this point.

■ One of the plaintiff's treating physical therapists, Andy Baumann, completed a "Clinical Assessment of Pain" form indicating the plaintiff has pain of such frequency and intensity as to preclude work. [R 236] The ALJ rejected this opinion:

> Little weight is given to the opinion of physical therapist, Andy Baumann.... This opinion is not entitled to any specific weight as he is not an acceptable medical source. In addition, he did not diagnose the claimant or perform any tests on the claimant.

[R 22] This total rejection of the opinions of the plaintiff's treating physical therapist is improper and unreasonable. Section 416.913(a) of the Commissioner's regulations determines who are acceptable medical sources for the purposes of establishing whether a claimant has a medically determinable impairment. However, once medical evidence from acceptable medical sources establishes the presence of a severe impairment, testimony from other medical sources may be used. Section 404.913(d) provides as follows:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, *we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work....* Other sources include, but are not limited to—
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and *therapists).*

20 CFR § 404.913(e) (emphasis added).

The importance of testimony from such sources has been recognized in this circuit. *See, Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984)(opinion of psychotherapist considered by court of appeals in determining decision of ALJ not supported by substantial evidence). The plaintiff's treating physical therapist observed the plaintiff during physical therapy, and a reasonable fact finder would surely accord his opinions great weight.

■ In addition to the above treating sources, the plaintiff was seen by a consulting examiner on March 13, 2002, at the request of the Commissioner. That consultant, Dr. Gulati, had available the treating notes from Dr. Hernandez and diagnosed "Fibromyalgia by history." [R 171] Dr. Gulati commented as follows:

> [Plaintiff] has a history of fibromyalgia and has been treated with multiple medications. It is my impression that the fibromyalgia is more of a subjective disease. It is my impression that this lady will not be able to hold any gainful employment.

[R 171] The ALJ gave Dr. Gulati's opinions "little weight." [R 22] The ALJ stated that Dr. Gulati's opinion "is not entitled to substantial weight as it is from a non-treating source and additional evidence has been received since that time." [R 22] The ALJ stated that Dr. Gulati's opinion that the plaintiff "will not be able to hold any gainful employment is not supported by his own findings." [R 22]

The ALJ is correct that Dr. Gulati's opinions are not entitled to the same weight as those of the plaintiff's treating physicians. However, Dr. Gulati reviewed the treating notes of Dr. Hernandez in forming his opinion. There is nothing to indicate that Dr. Gulati is a specialist in the field of rheumatology. Therefore, it is to be expected that he would rely heavily upon the diagnosis and notes of the plaintiff's treating rheumatologist in forming his opinion about the plaintiff's inability to work due to fibromyalgia.

It is unclear why the ALJ believed the presence of additional evidence undermined Dr. Gulati's opinion. The ALJ did not cite any particular evidence. Moreover, the treating records from Dr. Hernandez after March 13, 2002, continue to show the plaintiff suffering from fibromyalgia that was only minimally responsive to treatment. For example, on May 23, 2003, Dr. Hernandez noted the plaintiff "says she is hurting all over and she is not physically able to conduct her job." [R 198] On that visit, Dr. Hernandez again found "numerous tender points all of which are very characteristic of FMS." [R 198] He reported that "[s]he is on maximum therapy that I can recommend from my perspective. At this point she is asking for pain medications and I am recommending that she see a pain management physician." [R 198] On September 19, 2002, Dr. Hernandez noted that the plaintiff had cancelled her appointment with the pain management physician "because she could not afford the treatment." [R 198] His note continues: "Currently her symptoms are worsening in the terms of pain . . . ." [R 198] Therefore, the additional treatment notes from Dr. Hernandez in fact lend support to Dr. Gulati's opinion that the plaintiff would be unable to work. Dr. Gulati's opinion, in turn, strongly supports the opinions of Dr. Nuthi and the plaintiff's physical therapist.

The ALJ erred when he found the plaintiff did not meet either prong of the second part of the Eleventh Circuit pain standard: "The objective medical evidence shows that the claimant's medical conditions are not of such severity that they could reasonably be expected to give rise to the alleged symptoms to the extent that they would support a finding of disability at all levels of exertion." [R 21] This finding is inconsistent with his finding that the plaintiff suffers from fibromyalgia, since that is a condition that can cause disabling pain. *See, Stewart v. Apfel,* 245 F.3d 793, 2000 WL 33125958, 2000 U.S.App. Lexis 33214 (11th Cir. December 20, 2000) (unpublished decision) (court of appeals reversed and remanded for award of benefits based upon opinions of plaintiffs's doctors that she was unable to work due to fibromyalgia). The court in *Stewart* emphasized that the Social Security Administration has acknowledged that fibromyalgia is not detectable through diagnostic tests but rather through medically accepted clinical techniques that show the existence of an impairment. 2000 WL 33125958, 2000 Lexis 33214 at *8. Therefore, the plaintiff has satisfied the pain standard.[1]

The only activities of daily living cited by the ALJ to support his decision not to credit the plaintiff's allegations of disabling pain are as follows:

> The claimant states that she goes outside her home 1 to 2 times a day and that she visits with others. (Exhibit 2E). She also reports that she watches television and does some reading. (Exhibit 2E). The claimant also reports that she drives a car. (Exhibit 2E) All of these activities require some degree of concentration that is inconsistent with the extreme level of pain that the claimant is alleging.

[R 21] Exhibit 2E is a fatigue questionnaire completed by the plaintiff. On that form the plaintiff did not indicate that she

---

1. The ALJ actually considered whether the plaintiff's pain testimony was credible. No credibility determination is required if a claimant does not meet the pain standard. It is likely that the ALJ's determination that the plaintiff did not meet the pain standard was designed to support his credibility determination. This is not a proper application of the pain standard, which is designed to be a threshold determination made prior to considering the plaintiff's credibility.

was able to concentrate while reading or watching television. Nor did she indicate what she read or watched. She in fact wrote the following after the question "How much can be done before resting?"

I watch T.V. while I lie down or sit. Reading 10–15 minutes or until my headache prevents it.

[R 62] This hardly supports a finding that the plaintiff's pain was at a level that would allow concentration. In short, the activities recited by the ALJ in no way support a finding that the plaintiff could sustain gainful employment.

The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir.1997). As has been noted:

[S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. *Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity* .... It is well established that sporadic or transitory activity does not disprove disability.

*Smith v. Califano,* 637 F.2d 968, 971–72 (3rd Cir.1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In *Easter v. Bowen,* the court observed as follows:

Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered

disabled. *See Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir.1987) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir.1989). The *Easter* court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance...." 867 F.2d at 1130 (quoting *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980)).

It is apparent from a review of the ALJ's decision that he does not understand fibromyalgia or the Eleventh Circuit pain standard. The following is illustrative:

However, he medical evidence does not indicate that the claimant's impairments are of the severity that she alleges. An MRI of the claimant's cervical spine revealed only mild osteoarthritic changes. (Exhibit 5F, 3F). An MRI of the claimant's brain was normal. (Exhibit 9F). Nerve conduction studies revealed only mild carpal tunnel syndrome. (Exhibit 10F). The claimant has no neurological deficits. (Exhibit 7F). Dr. Gulati's examination revealed a normal range of motion for all axial joints of the spine. Doctor Gulati noted that he reviewed the claimant's x-rays that were normal and an MRI that was also normal.

[R 21] Fibromyalgia is not diagnosed by MRI or x-rays. As noted above, it is diagnosed by virtue of specific trigger points. Dr. Hernandez found these positive trigger points as well as negative controls. Dr. Hernandez is an expert in the field of fibromyalgia. The ALJ is not. The negative MRI and x-ray scans are meaningless in fibromyalgia cases. The

plaintiff does not allege that her pain is due to an abnormality of her cervical spine or brain. The ALJ's logic is akin to finding that a claimant is not experiencing shoulder pain based upon a negative MRI of the knee.

## CONCLUSION

The plaintiff's treating rheumatologist has diagnosed her as suffering from fibromyalgia. This diagnosis was well supported and uncontradicted. The plaintiff's treating neurologist has opined that she has pain at a disabling level. Her treating physical therapist has done the same. The Commissioner's own consultant opined that the plaintiff "will not be able to hold any gainful employment." The ALJ's articulated reasons for rejecting these opinions are unreasonable and not supported by substantial evidence. Likewise, the ALJ's articulation of reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, based upon the opinions of the plaintiff's treating physician and her own testimony about her pain, the plaintiff is unable to work. Therefore, the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.* An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

## *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*