**Johnny Ray DAVIS, Plaintiff,**

v.

**Michael J. ASTRUE, Commissioner of Social Security, Defendant.**

**Civil Action No. 05–G–1848–NW.**

United States District Court,
N.D. Alabama,
Northwestern Division.

March 21, 2007.

---

Douglas A. Wright, Douglas A. Wright PC, Florence, AL, for Plaintiff.

Arthurice T. Brundidge, Social Security Administration–Office of General Counsel, Atlanta, GA, Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, for Defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Johnny Ray Davis, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a peri-

od of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Earl C. Cates, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform his past relevant work, and accordingly found him not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

■■■ In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

 When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

 As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.

1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight. . . ." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. *See MacGregor,* 786 F.2d at 1054; *cf. Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

### DISCUSSION

In the present case the plaintiff alleges he is disabled due to frequent severe headaches, which require him to lie down for several hours two or more days per week. The ALJ did find the plaintiff suffers from migraine headaches, but found that he was not limited, "except he may need to occasionally lie down up to one hour twice a week during his regular breaks due to headache symptoms." [R 25] At the hearing, the ALJ asked the vocational expert ("VE") about the vocational impact of the plaintiff's headaches and a need to lie down:

> ALJ: [A]ssume the claimant has no physical limitations to perform any of these past jobs, but the claimant has recurrent headaches. If they are such that he has to lay [sic] down for, for up to an hour two times a week, could the claimant reliably perform these jobs?

> VE: If this could be accomplished during breaks and lunch, then it would

not preclude employment. However, if they occurred in an unpredictable manner, then they would preclude employment.

[R 72] There is no evidence in the record that supports the ALJ's finding that the plaintiff's need to lie down due to headaches would coincide with regular break times or lunch. Nothing in the medical evidence of record remotely supports such a finding. In fact, the medical evidence of record documents a long and continuous history of medical treatment for severe headaches. This treatment record included numerous emergency room visits and dozens of visits to the plaintiff's treating doctors due to severe headaches. The medical records show that many times, these headaches lasted for several days.

The plaintiff's treating osteopaths prescribed pain medication continuously, including for long periods of time narcotic pain medications containing hydrocodone. This is strong evidence showing that they believed the plaintiff's complaints of severe headache pain. The plaintiff was sent to Dr. Laughlin for a consultative evaluation by the Social Security Administration. Dr. Laughlin found "palpable spasms in the right upper cervical musculature and in the right trapezius area medially." [R 313] X-rays showed Schmorl's nodes [1] from L2 down. [R 314] His conclusion was as follows:

1) Chronic possibly radicular cervical area pain.

2) Chronic nonradicular lumbar pain.

3) Hypertension (controlled).

4) Anxiety.

5) Recurrent migraine headaches.

[R 313] Dr. Laughlin did not complete a physical capacities evaluation or give any opinion as to the plaintiff's abilities to perform work related activities. His evaluation does not contradict the findings of the plaintiff's treating physicians or provide substantial evidence to support the ALJ's finding regarding the plaintiff's residual functional capacity.

One reason given by the ALJ for refusing to credit the plaintiff was that he "testified he quit working because he was 'on the road too much' and not because of any medical condition that interfered with his work." [R 24] Contrary to this finding, the plaintiff in fact testified that it was his headaches that caused him to stop working:

ALJ: And why did you quit that job?

CLMT: My *headaches got so bad that I couldn't stand the driving and stuff* because you [sic] was on the road so much.

[R 45 (emphasis added).] The ALJ questioned the plaintiff again about the reason he left his last job:

ALJ: When you quit your job as escort driver, were you under threat of being terminated or you just made a decision that you just couldn't do it anymore or I mean were they, did they, did your work make that determination that you couldn't do it anymore or did you just decide that on your own?

CLMT: I had to do it on my own—

ALJ: Okay.

CLMT:—because you would leave early in the morning and you wouldn't be back until the next morning, and staying up, you know, being up a lot, *my headaches,* I just couldn't handle the tension of it.

[R 71 (emphasis added).] The plaintiff's actual testimony leaves no doubt that his stated reason for stopping work was because of his headaches. The ALJ in his

---

**1.** A Schmorl's node is "an irregular or hemispherical bone defect in the upper or lower margin of the body of the vertebra." *Dor-* *land's Illustrated Medical Dictionary* 1143 (28th Edition).

decision mischaracterized the plaintiff's testimony in an effort to make it appear the plaintiff simply did not like being away from home.

 Many of the ALJ's "findings" are based upon nothing more than speculation. For example, in his decision, the ALJ speculated as to the reason plaintiff was not working:

> One could infer that the claimant has refused to work and/or not reported his earnings because he did not want his former wife to get any part of his pay check. The failure to report earnings in and of itself, as well as working odd jobs, no doubt for cash, casts doubt on the plaintiff's credibility.

[R 24] These inferences are based upon no evidence of record. The ALJ's questioning of the plaintiff shows that the ALJ's inferences were contrary to the plaintiff's testimony:

> ALJ: I've got a question about your prior marriage. You were married to your spouse and you got a divorce. Did you ask for the divorce or did she ask for the divorce?
>
> CLMT: She did.
>
> ALJ: Okay. And how much child support were you ordered to pay for the two children?
>
> CLMT: 80.
>
> ALJ: 80 a week or—
>
> CLMT: A week.
>
> ALJ: So is it $640 a month for both children? Is that right?
>
> CLMT: I guess.
>
> ALJ: Okay you divorced in 1998.
>
> CLMT: Right.
>
> ALJ: And you have not worked per your earnings record since 1998. I just wonder if there's any, any issues there. I mean since you married your new spouse you haven't worked. I mean does your new spouse not want you to work or—

> CLMT: Yes. If I was able.
>
> ALJ: You were able?
>
> CLMT: If I were.
>
> ALJ: If you were.
>
> CLMT: Yes, sir.
>
> ALJ: Okay. So why didn't you work after the divorce?
>
> CLMT: I did.
>
> ALJ: You did?
>
> CLMT: Yeah.
>
> ALJ: Okay.
>
> CLMT: I had done the escort service.
>
> ALJ: Okay. When you worked at the escort service how were you paid?
>
> CLMT: Sir?
>
> ALJ: How were you paid?
>
> CLMT: Check.
>
> ALJ: Were you an independent contractor?
>
> CLMT: No. I just drove a pickup for him. He has his own business.
>
> ALJ: Okay. Okay. How come we don't have any reported earnings in the file. did you file Social Security taxes? Were Social Security taxes taken out of your check?
>
> CLMT: As far as I know.

[R 67] The plaintiff's testimony was that he believed Social Security taxes were being withheld by his employer. There is no evidence of record to the contrary. The ALJ's inference that the absence of recorded earnings shows the plaintiff deliberately failed to report earnings to avoid paying child support is pure speculation. An ALJ is not free to base his decision on hunches. Judge Johnson stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan*, as follows:

> ... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity;* however, as a hearing officer he may not arbitrarily substitute his own

hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840–41 (11th Cir.1992)(emphasis in original). It is the ALJ's job to weigh the *evidence* of record, not to engage in speculation. In the present case, the ALJ's decision was based upon his hunches about the plaintiff's child support and unreported earnings.

The ALJ in the present case does not appear to have been open to finding the plaintiff disabled due headaches. The following exchange between the ALJ and the plaintiff is also illustrative of the ALJ's disdain for the plaintiff's claim of disabling symptoms:

ALJ: Okay. So what do you do between say 8:00 and lunchtime, noon, after the kids are gone?

CLMT: Just sit around most of the time. I don't feel like doing anything.

ALJ: Do you watch TV?

CLMT: Yeah, some.

ALJ: Read books?

CLMT: Yes, sir.

ALJ: *I just don't understand how someone can sit at home and do things like that.* I mean—

CLMT: It's not fun.

[R 56 (emphasis added).] What the ALJ apparently fails to appreciate is that those who are disabled do not "sit at home" by choice. Benefits should not be denied to a claimant because an ALJ is unable to understand why disabled individuals "sit at home."

 In his decision the ALJ commented on the lack of MRI scans: "He has not had MRI scanning...." [R 24] He also commented that the plaintiff "has not obtained additional diagnostic studies that have been recommended...." [R 25] However, the ALJ did not consider the plaintiff's inability to pay for these tests. Poverty excuses noncompliance with prescribed treatment. *Dawkins v. Bowen,* 848 F.2d 1211, 1213 (11th Cir.1988). At his hearing, the plaintiff testified that he could not afford to have an MRI or to pay for treatment by specialists:

ALJ: Have you had an MRI?

CLMT: No. The doctor wanted me to, but I didn't have no insurance or the money to have it done.

[R 50]

ATTY: Has he [plaintiff's treating physician] suggested to you maybe going to the University at Birmingham?

CLMT: Yes, sir. To Ford Headache Clinic or something like that. He'd like for me to go there.

ATTY: Has he made a referral?

CLMT: I called and it's like $800 for the first visit, cash money. [R 65]

In the present case, the overwhelming medical evidence shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. *See* SSR 96–7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). The Commissioner's consultant did not contradict the plaintiff's treating physicians. Nor did his report support the ALJ's arbitrary finding about the plaintiff only needing to lie down during his regularly scheduled work breaks. There is, in fact, no medical evidence suggesting the plaintiff's headaches happen only during regularly scheduled work breaks, or that lying down during those breaks would restore the plaintiff's ability to work for the rest of the work day.

## CONCLUSION

 Substantial evidence does not support the ALJ's finding that the plaintiff

can perform his past relevant work. The VE's testimony establishes that if the plaintiff needed to lie down for up to an hour two time per week, as the ALJ found he must, he would be disabled if the need "occurred in an unpredictable manner." [R 72] There is no evidence in the record supporting the ALJ's conclusion that the plaintiff's headaches occurred in a predictable manner. Additionally, there is no evidence suggesting that lying down during scheduled work breaks would relieve the plaintiff's headaches so as to allow work during the remainder of the work day. The ALJ's finding on this point is not supported by substantial evidence and the VE testimony establishes that the plaintiff cannot work. This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala,* 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.*

An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 21 March 2007.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*