Heath L. WISNER, Plaintiff,

v.

Michael J. ASTRUE, Commissioner of Social Security, Defendant.

Civil Action No. 06–G–1131–NE.

United States District Court, N.D. Alabama, Northeastern Division.

July 9, 2007.

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Plaintiff.

Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL Deanna L. Sokolski, Social Security Administration, Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Heath L. Wisner, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security benefits and Supplemental Security Income payments. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

### STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be ex-

pected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. *Id.*

In the instant case, ALJ Jerry C. Shirley determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," he did not suffer from a listed impairment. The ALJ found the plaintiff

unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote,* at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote,* at 1558–59.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986); *accord Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight...." *MacGregor,* 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See *MacGregor,* 786 F.2d at 1054; cf. *Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## WHEN THE CLAIMANT HAS MULTIPLE IMPAIRMENTS

■ When a claimant has multiple impairments they must be considered in combination.

[A] claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling. In such instances, it is the duty of the administrative law judge to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.

*Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir.1984).

## DISCUSSION

The ALJ found that the plaintiff "has a complex partial seizure disorder status post surgical removal of a brain tumor,[1] a major depressive disorder, and a learning disorder, impairments that are severe in combination within the meaning of the Regulations but not severe enough to meet or medically equal" a Listing. [R. 28]. The ALJ found that the plaintiff had failed to show that he "has epilepsy or major motor seizures documented by EEG" under § 11.02 of the Listings (epilepsy-major motor seizures, including grand mal or psychomotor seizures), or under § 11.03 (epilepsy-minor motor seizures, including petit mal, psychomotor or focal seizures).[R. 28–29]. However, the plaintiff

testified, and Dr. Prasad and the plaintiff' mother confirmed, that he was having five to six seizure episodes per month, which certainly meets the frequency criterion of § 11.03 of the Listings.

■ The ALJ then found that because the medical records did not confirm "a documented record of anticonvulsant blood levels, which is required before any claim can be allowed pursuant to Social Security Rule 87–6 pertaining to the prescribed treatment in evaluation of epilepsy." [R. 29]. The plaintiff was not represented by counsel at the ALJ's hearing. [R. 351]. The ALJ always has an affirmative duty to develop a fair, full record. *Graham v. Apfel,* 129 F.3d 1420, 1422 (11th Cir.1997). In a pro se proceeding, that duty is heightened. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981). The ALJ in this case met neither his ordinary nor his heightened duty. One important aspect of the Commissioner's duty to develop a fair and complete record is his duty to recontact a claimant's treating physician. The Commissioner's regulations provide as follows:

(e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.

(1) We will first recontact your treating physician or psychologist or other

1. When the plaintiff was an infant, he underwent brain surgery for removal of a tumor in his right temporal lobe. The plaintiff, who was 20 years old at the time of the hearing, has since been treated during his childhood and teenage years for medically intractable partial epilepsy. In April 2004, Avinash Prasad, M.D., described the effects of the seizures:

His seizures are comprised of uncomfortable painful feeling behind his nose, redness

of the face, restless movements, and repeated spitting, [and shaking of] his hands symmetrically. At times, he has writhing movements of the upper extremities. [R. 296]. While Dr. Prasad noted that the seizures are not accompanied by a loss of consciousness and the duration is usually under two minutes, the frequency of the seizures is five or six times per month. [Id.].

medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.

20 C.F.R. § 404.1512(e).

■ The ALJ also rejected the findings and opinions of the plaintiff's treating psychiatrist, Daniel Meadows, Jr., M.D. [R. 34]. In response to a request for medical records from the Office of Hearings and Appeals, Dr. Meadows opined that the plaintiff's diagnosed major depression, recurrent, while generally in the mild to moderate range, "can reach severe ranges at times." [R. 288]. Dr. Meadows also confirmed a diagnosis of a learning disorder, not otherwise specified, and the plaintiff's seizure disorder. [Id.]. Dr. Meadows elaborated:

The most significantly impairing symptoms that [the plaintiff] tends to have from depression are impairment of his concentration and impairment of his motivation. He also has significant problems with irritability and prominent suicidal ideations at times, which he has felt unable to control, and have resulted in hospitalizations. It should be noted that when [the plaintiff's] symptoms reach their zenith, the patient would not be functional, in my opinion, and unable to sustain work. It should be noted that [the plaintiff's] uncontrolled seizures have played a significant role in the patient's depression, and are impairing in their own right. In summary, although I think [the plaintiff] is not continuously impaired by his depression, it is my belief that he is periodically impaired by this depression. I further believe that the periods of impairment occur frequently enough that they would prevent him from sustaining employment.

[R. 288]. Dr. Meadows also completed a Medical Source Opinion Form (Mental) in which he found the plaintiff had moderate limitations in using judgment in detailed or complex work-related decisions, dealing with changes in a routine work setting, understanding, remembering, and carrying out simple, one or two-step instructions, carrying out detailed or complex instructions, responding to customary work pressures, and maintaining attention, concentration or pace for periods of at least two hours. [R. 290–291].

In rejecting the opinion of Dr. Meadows, the ALJ found that the plaintiff's medical condition had "improved" as of September 5, 2003. [R. 34]. The court finds this reasoning ambiguous at best, in that "improved" is not the same as "cured." The ALJ also found Dr. Meadows's testimony as inconsistent "with the other substantial evidence of record, the claimant's consultative psychological evaluation[2], and the

2. The consultative examination was performed November 25, 2003, by Jack L. Bentley, Jr., Ph.D., and is consistent with Dr. Meadows's opinion. Dr. Bentley diagnosed major depression, recurrent, mild to moderate, without psychotic features, a learning disorder, a seizure disorder, and stated his prognosis was guarded. [R. 259]. A diagnosis of

claimant's reported activities, including work activities helping his grandmother as an egg gatherer." [R. 34]. The ability to occasionally assist his grandmother in collecting eggs, described by the ALJ as "work activities," is not the equivalent of sustaining full-time employment. In any event, the opinions of a psychotherapist may not be arbitrarily ignored. *See, Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984)(opinion of psychotherapist considered by court of appeals in determining decision of ALJ not supported by substantial evidence). Because Dr. Meadows is a specialist in the field of psychiatry, his opinion is entitled to more weight in this area.[3] If the ALJ had questions regarding Dr. Meadows's opinion, he could have recontacted Dr. Meadows or ordered a further consultative examination.[4] The ALJ's rejection of the opinion of Dr. Meadows is not supported by substantial evidence. Because the ALJ failed to properly refute the plaintiff's treating physician's testimony, as a matter of law that testimony must be accepted as true. *MacGregor,* 786 F.2d at 1053; *Elam,* 921 F.2d at 1216.

The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th Edition) ("DSM–IV"). A GAF of 41–50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM–IV at 32. Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below. The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability. *See Hillman v.Barnhart,* 48 Fed.Appx. 26, 2002 WL 31260962 at * 3, n. 1 (3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); *Rutter v. Comm'r of Soc. Sec.,* 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir.1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); *Roemmick v. Shalala,* 59 F.3d 176 (Table), 1995 WL 299894 at *2, n. 1 (9th Cir.1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); *Seymore v. Apfel,* 131 F.3d 152 (Table), 1997 WL 755386 at *2 (10th Cir.1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); *Stalvey v. Apfel,* 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir.1999)("The GAF is not an absolute determiner of ability to work."). *But cf. Lloyd v. Barnhart,* 47 Fed.Appx. 135, 2002 WL 31111988 at *1, n.

---

severe depression is strongly indicative of an inability to work. For example, the *Diagnostic and Statistical Manual of Mental Disorders* describes the criteria for assigning the specifier "Severe Without Psychotic Features" to a major depressive episode: "Episodes that are *Severe Without Psychotic Features* are characterized by the presence of most of the criteria symptoms and *clear-cut, observable disability (e.g., inability to work* or care for children)." 412 (4th Edition, Tex Revision) ("DSM–IV–TR") (italics in original)(emphasis added).

The ALJ gave great weight to Dr. Bentley's consultative examination. [R. 34].

3. "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5.

4. As to the report of Dr. Meadows, the ALJ stated, "Well that's a recent report. There's a possibility I may ask him to go out for further testing, but I may not." [R. 371].

2 (3rd Cir.2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

On January 22, 2003, Dr. Meadows assigned a GAF of 45–50 to the plaintiff. [R. 251]. The ALJ mentioned this GAF only in passing. [R. 25]. On January 30, 2003, the plaintiff was admitted to Hill Crest Hospital for suicidal ideation, where Lee Ann Blackmon, M.D., assigned a current GAF of 20. [R. 207–209]. Upon a readmission on April 3, 2003, Dr. Blackmon[5] assigned a GAF of 50. [R. 215–218]. It is curious to the court that the ALJ failed to adequately address these relevant GAFs. Proper consideration to these GAFs in combination with the plaintiff's seizure disorder and depression would compel a finding that the plaintiff's impairments equal a listing.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir.1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. *Id.* An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED.

### *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*

DONE and ORDERED.

---

5. In assessing the plaintiff's history, Dr. Blackmon stated that the plaintiff's mother "alleged that the patient had killed [two] cats. The patient denied this." [R. 215].